Clerk's Office
Filed Date: 8/18/21

U.S. DISTRICT COURT
EASTERN DISTRICT OF
NEW YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

IN RE: GOVERNMENT
INVESTIGATION

MEMORANDUM AND ORDER
21-MC-2349

----------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge, Part I:

Federal prosecutors would like to use an attorney (the "Subject Attorney") as a confidential source in an investigation of fraud and money laundering. During the investigation, investigative targets "may have the Subject Attorney's purported client"—also an investigative target—"contact the Subject Attorney." Letter dated Aug. 11, 2021 at 6 (Dkt. #2) ("Letter"). The government asserts that any resulting communications would be covered by the crime-fraud exception to the attorney-client privilege. The government also expects that the Subject Attorney will communicate with investigative targets who are not the attorney's clients during the investigation. Prosecutors expect that, during those contacts, the Subject Attorney "will . . . have to make some misrepresentations to the [targets] . . . in order for law enforcement to successfully use the Subject Attorney as a confidential source." *Ibid.* While New York Rule of Professional Conduct 8.4(c) states that a lawyer shall not "engage in conduct involving dishonesty, fraud, deceit or misrepresentation," the government argues that the anticipated conduct would not violate that rule based on decisions "recogniz[ing] that deception by attorneys during undercover activities in support of legitimate law enforcement objectives does not violate ethics rules." Letter at 6.

The government seeks to have its positions on privilege and professional obligations adopted in a court order. It proposes that I "order[] that the government be allowed to use [a] Subject Attorney as a confidential source"; order "that the Subject Attorney is permitted to make

1

misrepresentations" to certain investigative targets, under FBI supervision; and "order[] that any communications between the Subject Attorney and his purported client [are] deemed . . . not to be privileged pursuant to the crime-fraud exception to the attorney-client privilege." Proposed Order at 2 (Dkt. #1-1).

I am not persuaded I have the authority to "order" the government's view on the application of state ethics rules and privilege doctrine. The government asserts that the Court may do so based on its "inherent authority." But the cases that the government cites establish no such thing. The first pair of decisions recognizes a court's authority to discipline the attorneys who appear before it. *See In re Snyder*, 472 U.S. 634 (1985); *In re Jacobs*, 44 F.3d 84 (2d Cir. 1994). That authority "derives from the lawyer's role as an officer of the court which granted admission." *Snyder*, 472 U.S. at 643. But the power to make and enforce rules for attorneys appearing before a court does not imply a power to issue advisory rulings on lawyers' *other* ethical obligations.

The only other cases that the government invokes are decisions adjudicating pre-enforcement challenges to particular ethics rules. *Stern v. U.S. Dist. Ct.*, 214 F.3d 4, 9 (1st Cir. 2000); *United States v. Colo. Sup. Ct.*, 87 F.3d 1161, 1163-64 (10th Cir. 1996); *Whitehouse v. U.S. Dist. Ct.*, 53 F.3d 1349, 1356 (1st Cir. 1995). But those cases merely underscore that I lack the authority invoked here. Those cases are traditional lawsuits. They are adversarial actions against rule-makers in which prosecutors invoked statutory grants of jurisdiction and argued that the rules at hand conflicted with federal law or exceeded the rule-makers' authority. *See United States v. Colo. Sup. Ct.*, 871 F. Supp. 1328, 1328 (D. Colo 1994); Br. for Pls.-Appellants, *Whitehouse v. U.S. Dist. Ct.*, No. 94-1889, 1994 WL 16496464 (1st Cir. Sept. 26, 1994) (jurisdictional statement); Br. of Pl.-Appellant, *Stern v. U.S. Dist. Ct.*, No. 99-1839, 1999 WL 34828582 (jurisdictional statement, statement of the issues). Moreover, in those cases, the plaintiffs satisfied

the related Article III requirements of standing and ripeness. *See Trump v. New York*, 141 S. Ct. 530, 535 (2020). Standing requires "'an injury that is concrete, particularized, and imminent rather than conjectural or hypothetical,'" while ripeness requires that a challenge not be "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Ibid.* (citations omitted). The prosecutor-plaintiffs cleared those hurdles by demonstrating that they sought to undertake conduct that was forbidden by ethics rules, and that those rules would probably be enforced against them. *See Colo. Sup. Ct.*, 87 F.3d at 1164-66 (explaining application of standing principles to one such suit); *Stern,* 214 F.3d at 11 (explaining application of ripeness principles to another such suit).

Those decisions illustrate what the government's request here is lacking. First, prosecutors point to no statute conferring jurisdiction over the *ex parte* claim they bring. Second, they fail to allege any "actual or imminent" injury. They urge that their proposed conduct is entirely consonant with state ethics rules and federal privilege doctrine—not that their conduct would expose them to an imminent risk of sanctions. No justiciable controversy exists when a party is simply "endeavor[ing] to obtain a court's assurance that a [provision] does not govern hypothetical situations." *Int'l Longshoremen's & Warehousemen's Union, Local 37 v. Boyd*, 347 U.S. 222, 223 (1954); *see Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation omitted) (alteration in original) (noting that federal courts cannot "give opinion[s] advising what the law would be upon a hypothetical state of facts"). Third, the government presents questions that are not ripe. The Subject Attorney may or may not have contact with his purported client. And his communications with other investigative targets may or may not unfold as planned. In other words, prosecutors are seeking a ruling on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump*, 141 S. Ct. at 535 (citation omitted). In sum, this application presents none

of the hallmarks of a justiciable case or controversy. Because "[f]ederal courts do not possess a roving commission to publicly opine on every legal question," and cannot "issue advisory opinions" or "adjudicate hypothetical or abstract disputes," *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2203 (2021), the government's application is denied.

## CONCLUSION

The government's application is denied.

SO ORDERED.

                                        */s/ Rachel Kovner*
                                        RACHEL P. KOVNER
                                        United States District Judge

Dated: August 16, 2021
       Brooklyn, New York